## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61776-CIV-ZLOCH/ROSENBAUM

FOOD MARKETING CONSULTANTS,
INC., d/b/a COLOR ALL ABOUT IT,
a Florida Corporation

       Plaintiff,

vs.

SESAME WORKSHOP,

       Defendant.

_____/

## REPORT & RECOMMENDATION

This matter is before the Court on Defendant Sesame Workshop's Motion to Dismiss, Or, In The Alternative, Motion to Transfer Venue [D.E. 10], pursuant to an Order of Referral entered by the Honorable William J. Zloch, United States District Judge [D.E. 14]. The Court has carefully reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the record in this case, and is otherwise fully advised in the premises. After consideration, I respectfully recommend that the Court deny Defendant's Motion to Dismiss, and the Court grant the Motion to Transfer Venue for the reasons discussed below.

### I. BACKGROUND

Defendant filed the Motion to Dismiss pursuant to Rule 12(b)(3), Fed. R. Civ. P., and 28 U.S.C. §§ 1406(a) and 1404(a), invoking a contractual forum-selection clause that Defendant contends requires venue in New York County. Alternatively, Defendant seeks a transfer of the case to the Southern District of New York.

**A.  The Underlying Facts**

This dispute stems from a business relationship between Plaintiff and Defendant wherein the parties entered into a written Publishing License Agreement ("License Agreement").  Plaintiff Food Marketing Consultants, Inc., d/b/a Color All About ("Plaintiff"), is a Florida corporation with its principal place of business in Broward County, Florida.  D.E. 1, ¶ 2.  Defendant Sesame Workshop ("Defendant") is a New York non-profit organization with its principal (and sole) place of business in New York, New York.  *Id.* at ¶ 3 & D.E. 11 at 2.  Defendant's organizational purpose includes educating children, primarily through the popular television show *Sesame Street*.  D.E. 11 at 1.  Defendant obtains its funding through charitable donations and revenues from licensing its intellectual property.  *Id.*

In 2005, Plaintiff approached Defendant at a trade show in New York to discuss licensing opportunities for coloring books.  *Id.* at 3.  Following this interaction, Defendant prepared and sent a draft of the License Agreement to Defendant on November 8, 2005.  *Id.*  The draft contained a forum-selection clause included in almost all of Defendant's licensing agreements.  *Id.* at 2.  The clause states as follows:

> Governing Law. This Agreement, and all modifications or extensions thereof, shall be governed in all respects by the law of the State of New York applicable to contracts to be fully executed and performed in New York State, without reference to conflict of laws.  Any disputes arising under this agreement shall be subject exclusively to the jurisdiction of the state and/or federal courts having jurisdiction over New York County.

*Id.* at 20.[1]  Plaintiff, which returned the signed License Agreement on February 1, 2006, did not raise any questions or concerns regarding the License Agreement or forum-selection clause before returning the executed Agreement.  *Id.* at 3.

According to the Complaint, shortly after the parties entered into the License Agreement, everything was not A-OK.  Although Defendant submitted coloring book designs to Plaintiff for approval, Defendant refused to sign off on any plans for coloring books smaller than 16 x 20 inches.  *See* D.E. 1 at 3.  Apparently, however, it's not easy making green selling coloring books that are as large as 16 x 20 inches.  *Id.* at 2-3.  Consequently, as well as for other reasons, Plaintiff asserts, Plaintiff did not market coloring books under the License Agreement for approximately two years, until Defendant eventually approved coloring books of the sizes 14 x 17.5 inches and 16 x 20 inches.  *Id.* at 4.

Even then, however, Plaintiff alleges, Defendant further eroded any benefits that Plaintiff might have obtained under the License Agreement.  *Id.*  In this regard, Plaintiff claims that Defendant did not permit Plaintiff to use existing art and allowed others to sell coloring books in competition with Plaintiff, despite an exclusivity provision within the License Agreement.  *Id.*  In addition, Plaintiff complains that Defendant did not authorize Plaintiff to display its products with non-Sesame Street items on retail floor displays, as it apparently did not approve of the situation where one of these things was not like the others.  *Id.*

---

[1]Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system.  This Order refers to the page numbers left by the Court's CM/ECF system.

Thus, Plaintiff asserts, it obtained a concession from Defendant to eliminate guaranteed royalties.[2] *Id.* at 5.  Thereafter, Plaintiff claims that it invested additional monies in developing and marketing its coloring books.  *Id.*  Defendant, however, allegedly demanded payment of royalties and subsequently terminated the contract.  *Id.*

**B.  "L" is for Lawsuit**

Based on these events, Plaintiff filed the Complaint in this action in the Southern District of Florida.  [D.E. 1].  The Complaint charges four counts: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraudulent inducement; and (4) negligent misrepresentation.  *Id.*

In response, Defendant filed its Motion to Dismiss, Or, In The Alternative, Motion to Transfer Venue ("Motion to Dismiss") [D.E. 10].  In its Motion to Dismiss, Defendant invokes the "Governing Law" provision in the License Agreement, explaining that it requires the inclusion of this clause in nearly all of its contracts because litigating outside New York would be costly and draw funds from Defendant's educational mission.  *See* D.E. 10 at 4; *see also* D.E. 11-1 at 2.  Moreover, Defendant argues, Defendant's witnesses include only the people in its neighborhood, and all relevant documents of Defendant are likewise located in New York.  D.E. 10 at 4; D.E. 11-1 at 3.  In opposition, Plaintiff asserts that the "Governing Law" provision in the License Agreement is ambiguous with regard to venue and must be construed against Defendant as the drafter.  D.E. 12 at 3.  In addition, Plaintiff contends, the choice-of-venue clause applies only to claims arising under the License Agreement, and some of Plaintiff's counts do not fall into that category.  *Id.*

---

[2]In this Report and Recommendation, "royalty" refers, of course, to "[a] payment . . . made to an author or inventor for each copy of a work or article sold under a copyright or patent," *see Black's Law Dictionary* 1445 (9th ed. 2009), not to the Alligator King or his seven sons.

Furthermore, most of Plaintiff's records are located in Florida, and one of Plaintiff's key witnesses, who also resides in Florida, has difficulty traveling, stemming from a car accident that occurred after the execution of the License Agreement. *Id.* at 12-13. Thus, Plaintiff urges, transfer of venue to New York would be inconvenient to Plaintiff. Finally, as an alternative to granting Defendant's Motion to Dismiss, Plaintiff asserts, this case should be transferred only to the United States District Court for the Southern District of New York. *Id.* at 13-14.

In its Reply, Defendant takes issue with Plaintiff's contentions, arguing that the "Governing Law" provision is clear and that it is drafted broadly enough for all of Plaintiff's claims to fall within it. *See* D.E. 13. Following Defendant's filing of its Reply, the Honorable William J. Zloch referred this matter to me for a report and recommendation. *See* D.E. 14. The parties have fully briefed the issues and this matter is now ripe for this Court's disposition.

## II. ANALYSIS

### A.  Motion to Dismiss for Improper Venue

Defendant argues that this matter must be dismissed for lack of venue pursuant to Rule 12(b)(3), Fed. R. Civ. P., based on a valid forum-selection clause contained in the License Agreement entered into by the parties. *See* D.E. 10. In the alternative, Defendant seeks to transfer venue to the United States District Court for the Southern District of New York. *Id.* The Court begins with Defendant's Motion as it seeks dismissal.

Title 28, United States Code, Section 1391(a) provides for venue in diversity actions such as this one. Specifically, Section 1391(a) states that a civil action proceeding in diversity jurisdiction may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In accordance with this provision and under the facts of this case, venue lies in New York. Defendant is a New York non-profit organization, and its single office is located in New York. D.E. 11-1 at 1-2. In fact, all of Defendant's operations, employees, and records relating to this case are in New York. *Id.* at 2. Moreover, the License Agreement mandates that New York law governs, and Plaintiff has interacted with Defendant in New York relating in some way to the License Agreement on at least three occasions. *Id.* at 3, 20. In particular, according to the affidavit of Scott Chambers, the Senior Vice President of Worldwide Media Distribution for Defendant, Plaintiff first approached Chambers about licensing activities for large-scale coloring books at a trade show in New York City. *Id.* at 3. Additionally, Chambers attests that after execution of the License Agreement, representatives of Plaintiff visited Defendant in New York at least twice. *Id.* Chambers also recounts that all of Defendant's employees who dealt with Plaintiff regarding the subject matter of this dispute did so from New York. *Id.* Based on these facts, venue lies in the Southern District of New York.

Setting aside the contractual provision at issue in this case, venue ordinarily also would be proper in this district. In this regard, the Complaint asserts that "Defendant's conduct, acts and/or omissions which give rise to this action occurred in this venue." *Id.* at ¶ 5. Moreover, Plaintiff does not suggest that in the absence of the forum-selection clause in the License Agreement, venue would be improper in the Southern District of Florida.

Thus, even if the forum-selection clause is enforceable, Defendant's Motion to Dismiss as it seeks dismissal of this case fails. Writing for himself and two other judges in a concurring opinion in a matter where the Eleventh Circuit sat *en banc*, Judge Tjoflat found that a district court had properly denied a defendant's motion to dismiss for improper venue – even though a forum selection clause purported to limit venue to another jurisdiction – because under 28 U.S.C. § 1391(b) & (c), venue was not improper in the district where the case was originally brought. *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1073 (11th Cir. 1987) (Tjoflat, J., concurring), *aff'd and remanded on other grounds*, 487 U.S. 22 (1988) ("*Stewart*").[3] Thus, even a valid forum selection clause precluding venue in a given district does not provide a basis for dismissal of a case where venue is otherwise proper in that district under the federal venue statutes. Rather, where a forum selection clause exists, the proper method for seeking to enforce that provision is a motion to transfer venue pursuant to 28 U.S.C. § 1404. *See id.*; *see also Exprezit Convenience Stores, LLC v. Transaction Tracking Technologies, Inc.*, 2005 WL 2704891, at *3 (N.D. Fla. Oct. 19, 2005) (citing *Stewart*, 487 U.S. 22, 28-29 (1988); *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1379 (N.D. Ga. 2004); *D/H Oil and Gas Co. v. Commerce & Indus. Ins. Co.*, 2005 WL 1153332, at *3 (N.D. Fla. May 9, 2005). Therefore,

---

[3]Although the Eleventh Circuit has found appropriate a motion to dismiss for improper venue where the forum-selection clause specified an *international* forum, *see Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1290 (11th Cir. 1998), the court was careful to clarify that the federal statutory provisions governing transfer of venue from one United States jurisdiction to another did not govern in that case. That, of course, is not the situation here. The Court notes that the Eleventh Circuit has also declined as of yet to adopt the First Circuit's holding in *Lambert v. Kysar*, 983 F.2d 1110, 1112-13 (1st Cir. 1993), that a valid forum-selection clause can cause venue to be improper under federal venue statutes. *See Hollis v. FSU*, 259 F.3d 1295, 1300 n.5 (11th Cir. 2001).

I respectfully recommend that the Court deny Defendant's Motion to Dismiss as it seeks to dismiss this action.

## B.  Motion to Transfer Venue

Turning to Defendant's Alternative Motion to Transfer Venue, the Court begins by reviewing 28 U.S.C. § 1404(a), which provides, "[F]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) vests discretion in the district court to adjudicate motions for transfer on an "'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart*, 487 U.S. at 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In this case, no question exists that this action could have been brought properly in the Southern District of New York, as explained previously.  Instead, the issue centers on whether the convenience of the parties and the interests of justice require that the dispute be transferred.

In the Court's resolution of this question, a valid contractual choice-of-forum clause constitutes "a significant factor that figures centrally in the District Court's calculus." *Id.*; *see also P & S Bus. Machines, Inc.*, 331 F.3d at 807.  Thus, while not fully determinative of the issue of transfer, forum-selection clauses are entitled to unique and considerable weight in the analysis.  *See, e.g., In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (stating the venue mandated by a choice-of-forum clause rarely will be outweighed by other Section 1404(a) factors); *see also P & S Business Machines*, 331 F.3d at 807.

In considering a forum-selection clause in its transfer analysis, a court must decide whether the clause is valid and enforceable and then determine the scope of the clause – *i.e.*, whether the

clause applies to the types of claims asserted and the parties involved.  The Court, therefore, analyzes each issue in turn.

1.   The Forum-Selection Clause Is Valid and Enforceable

Parties to a contract can agree in advance to submit to the jurisdiction of a given court. *Alexander Proudfoot Co. World Headquarters, L.P. v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989) (citations omitted).  Courts favor the enforcement of this type of agreement where the parties freely negotiated the contract and where application of the clause is not unreasonable or unjust, or otherwise invalid due to fraud.  *See id.*; *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("*Bremen*").  Indeed, Justice Kennedy has noted, "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring).

In determining whether a forum-selection clause should be enforced, courts apply federal law under 28 U.S.C. § 1404(a).  *P & S Business Machines*, 331 F.3d at 807 (citing *Stewart*, 487 U.S. at 28-29).  Under federal law, forum-selection clauses are presumptively valid.  *Bremen*, 407 U.S. at 15; *see also Krenkel v. Kerzner Intern. Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).  A party may overcome the presumption of validity, however, by a making a "strong showing" that enforcement would be unfair or unreasonable under the circumstances.  *Krenkel*, 579 F.3d at 1281. This burden is "extremely difficult to overcome."  *Picken v. Minuteman Press Intern., Inc.*, 854 F. Supp. 909, 911 (citing *In re Ricoh*, 870 F.2d at 573; *Stewart*, 487 U.S. at 33).  Indeed, the Supreme Court has instructed, "A valid forum selection clause [should be] given controlling weight in all but the most exceptional cases."  *Stewart*, 487 U.S. at 33.

Courts will find forum-selection clauses to be unreasonable and invalidate them in four situations: (1) the formation of the provision resulted from fraud or over-reaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; and (4) enforcement of the clause would contravene public policy. *Id.* (citing *Lipcon*, 148 F.3d at 1296). Here, Plaintiff's arguments as to why the Court should deem invalid and unenforceable the forum-selection clause in this case appear to fall into the first two categories, if any.

### a. The Forum-Selection Clause Did Not Result from Fraud or Over-Reaching

While it is not entirely clear that Plaintiff seeks to invalidate the forum-selection clause on grounds that it resulted from fraud or over-reaching, Plaintiff does assert that two of the claims in the Complaint (fraudulent inducement and negligent misrepresentation) are not subject to the forum-selection clause because these claims allegedly do not arise out of the License Agreement.[4] D.E. 12, at 7–10. Construing this argument generously to include a challenge to the validity of the forum-selection clause on the basis of fraud or over-reaching, in addition to an argument directed to the scope of the choice-of-forum clause, the Court notes that allegations that the underlying contract in general was fraudulently induced do not render the forum-selection clause unenforceable. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). Rather, the "fraud or overreaching" that provides grounds to deny enforcement of a forum-selection clause pertains to the incorporation of the clause itself. *See id.* "If a forum clause were to be rejected whenever a plaintiff asserted a generic claim of fraud in the inducement, . . . forum clauses would be rendered essentially

---

[4]Plaintiff initially describes three of its claims as falling outside the bounds of the forum-selection clause. *See* D.E. 12 at 1. In its actual argument on this point, however, Plaintiff refers only to its two claims for fraudulent inducement and negligent misrepresentation. *See id.* at 7-10.

meaningless." *REO Sales, Inc. v. Prudential Ins. Co. of Am.,* 925 F. Supp. 1491, 1495 (D. Colo. 1996).

Instead, for a party to escape a forum-selection clause on the grounds of fraud, it must show that the inclusion of the clause in the contract resulted from fraud or coercion. *Lipcon*, 148 F.3d at 1296 (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). "By requiring the plaintiff specifically to allege that the choice clause itself is unenforceable, courts may ensure that more general claims of fraud will be litigated *in the chosen forum*, in accordance with the contractual expectations of the parties." *Id.* at 1296 (emphasis in original).

In the pending matter, Plaintiff has presented no evidence or other discernible argument that the forum-selection clause itself in the License Agreement stemmed from fraud or coercion. The most that Plaintiff has alleged is a general claim of fraudulent inducement relating to the License Agreement as a whole. As noted above, however, this cannot suffice to free Plaintiff of the forum-selection clause bonds.

Moreover, the uncontroverted evidence in the record reveals that Plaintiff had approximately three months over which to mull the License Agreement, from November 8, 2005, until Plaintiff ultimately signed the License Agreement on February 1, 2006. D.E. 11-1 at 3. During this period, Plaintiff never once raised any concerns about the forum-selection clause. *Id.* In short, nothing in the record at this time supports a finding that Defendant procured the forum-selection clause by fraud. Rather, the Court finds that Plaintiff freely negotiated the forum-selection clause and therefore should be bound by it.

*b.  Would Plaintiff Be Deprived of Its Day in Court by the Forum-Selection Clause Because of
Inconvenience or Unfairness?*

On a traditional motion to transfer under Section 1404(a), the burden falls on the movant to

establish clearly that the suggested forum is more convenient.  *In re Ricoh Corp.*, 870 F.2d at 573.

Where "the parties have entered into a contract containing a valid, reasonable choice of forum

provision, [however,] the burden of persuasion is altered."  *Id.*  In this situation, the party seeking

to preclude the enforcement of the forum-selection clause must shoulder the burden to show that the

contractually designated forum is sufficiently inconvenient to justify retention of the dispute.  *Id.*;

*see also P & S Bus. Machines, Inc.*, 331 F.3d at 807.  Indeed, a party opposing litigation in the

specified forum must demonstrate that proceeding with the case in that forum would impose such

grave difficulty and inconvenience that, for all practical purposes, the party would be deprived of its

day in court.  *Id.*; *see also Bremen,* 407 U.S. at 18 (applying same burden on party opposing *forum

non conveniens* motion for dismissal of action in favor of foreign forum based on forum-selection

clause); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).

In considering this issue, a court should take into account the "convenience of the witnesses

and those public-interest factors of systemic integrity and fairness that, in addition to private

concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc.*, 487 U.S. at 30.

Similarly, if "intervening and unexpected occurrences between the contract's formation and filing

of the suit [have happened such that] the contract's purpose would be frustrated [by enforcement of

the clause,]" a court may elect not to follow the forum-selection clause.  *See In re Ricoh Corp.*, 870

F.2d at 574.

In the case at hand, the Court finds that Plaintiff has failed to make the "strong showing" that

enforcement would be unfair or unreasonable under the circumstances, necessary to overcome the

presumptive venue to which the parties agreed in the License Agreement.  *See Krenkel*, 579 F.3d at 1281.  Although venue in the Southern District of Florida would be proper in the absence of a valid and enforceable forum-selection clause, Plaintiff cannot demonstrate that venue in the Southern District of New York would be unfair, unreasonable, or adverse to the interests of justice.

First, as discussed above, venue lies in the Southern District of New York.  Second, Plaintiff has not established that proceeding in the Southern District of New York would be unfair, unreasonable, or adverse to the interests of justice.  In support of its position that venue should proceed in the Southern District of Florida, Plaintiff submits the Declaration of Robert Tammara, the president of Plaintiff.  *See* D.E. 12-1.  In his Declaration, Tammara notes that when the parties executed the License Agreement, he was able to travel.  *Id.* at 2.  Unfortunately, however, in the intervening period, Tammara sustained "major injuries" in a car accident that occurred in July, 2008.  *Id.*  As a result, Tammara's ability to travel and work have been "severe[ly] limit[ed]."  *Id.*  Indeed, Tammara offers, "Due to my injuries, travel to New York would be incredibly difficult."  *Id.*

While the Court is not unsympathetic to Tammara's circumstances, the Court, nonetheless, notes, as it must, that while travel may well be "incredibly difficult" for Tammara, Tammara has not indicated that travel is not possible.  Nor has Tammara noted any manner in which Tammara's travel difficulties might adversely affect Plaintiff's legal position or its ability to prevail in this case if the matter is transferred to the Southern District of New York.  Indeed, although Tammara's assertions suggest that he will be a witness in this matter, should it progress to trial, Tammara does not indicate any reason why he might anticipate traveling to New York in connection with this case, other than for purposes of trial.  Although the Court does not wish to minimize any inconvenience or difficulty that Tammara may incur as a result of such travel, under these circumstances, the Court discerns no

reason why Tammara's travel difficulties for trial, while significant, should prevent Plaintiff from fully litigating this case and receiving a fair trial in the Southern District of New York. *See Caputo v. Holland America Line, Inc.*, 2009 WL 2258326, *4 (E.D.N.Y. Jul. 29, 2009).

Tammara's assertion that he "did not understand [the forum-selection clause] to mean that all lawsuits between the parties, including contract claims, could only be filed in New York County, New York" is similarly unavailing. *See* D.E. 12-1 at 2. "Where the plain meaning of an agreement is clear, [the court] may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004) (citing *Restatement (Second) of Contracts* ch. 9, introductory note (1981)); *see also In re Matca-Norca, Inc.*, 22 A.D.3d 495, 496 (N.Y. App. Div. 2005) ("It is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract . . . .") (citations omitted). Here, the "Governing Law" provision states, in relevant part, "Any disputes arising under this agreement shall be subject exclusively to the jurisdiction of the state and/or federal courts having jurisdiction over New York County." D.E. 11-1 at 20.

Plaintiff asserts two arguments in support of its contention and Tammara's averment that that the provision at issue does not unambiguously require venue in New York County. Neither can succeed. First, Plaintiff urges that the provision "fails to define what is meant by 'jurisdiction,' which has numerous general and specific definitions." D.E. 12 at 4. Plaintiff continues by noting that jurisdiction involves a different concept than venue, a term that does not appear in the contractual provision at issue. *Id.* at 5. Second, Plaintiff advocates that the clause could be

-14-

reasonably interpreted to constitute a choice-of-law provision because the title of the paragraph is "Governing Law."  D.E. 12 at 5.

The problem with Plaintiff's positions arises from the fact that the parties need not recite a particular formulation of words as though it is some type of magical incantation in order simply to relate an agreed-upon concept.  As long as the meaning of the expression that the parties choose is clear, the court must find the parties' intent within the contract itself.  *See Norfolk S. Corp.,* 371 F.3d at 1290; *In re Matca-Norca, Inc.*, 22 A.D.3d at 496.  Here, the provision at issue is clear and unambiguous:

> Governing Law. This Agreement, and all modifications or extensions thereof, shall be governed in all respects by the law of the State of New York applicable to contracts to be fully executed and performed in New York State, without reference to conflict of laws.  Any disputes arising under this agreement shall be subject exclusively to the jurisdiction of the state and/or federal courts having jurisdiction over New York County.

D.E. 11-1 at 20.

While Plaintiff correctly notes that the provision Defendant offers as the forum-selection clause appears in a portion of the License Agreement entitled, "Governing Law," only the first sentence of the clause addresses choice-of-law concerns.  The second sentence does not pertain to choice-of-law at all, but, rather, deals with jurisdiction, and, by virtue of its phrasing, venue.  Were the Court to limit the meaning of the "Governing Law" provision to choice-of-law concerns only, it would have to ignore entirely the second sentence of the provision.  This is not a viable option. *See Chadwick v. Esperanza Trade & Transp. Ltd.*, 548 F.2d 1161, 1162 (5th Cir. 1977) ("Effect will

be given, if possible, to all of the language of the contract.");[5] *Reda v. Eastman Kodak Co.*, 233 A.D. 2d 914, 915 (N.Y. App. Div. 1996) ("Effect and meaning must be given to every term of the contract").

The second sentence requires the parties to submit all disputes arising out of the License Agreement to the jurisdiction of, in this case, the United States District Court for the Southern District of New York.   Moreover, the second sentence describes the disputes as being subject "exclusively" to such jurisdiction.   As the Eleventh Circuit has noted, "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, 'in contrast, dictates an exclusive forum for litigation under the contract.'" *Global Satellite Comm'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) (citation omitted).   The Court cannot conceive of how a dispute arising under the License Agreement could be subject *exclusively* to the "jurisdiction of [state and federal courts] having jurisdiction over New York County" without being litigated in such a court.

Nor does Plaintiff's proposed construction of the second sentence suggest a viable alternative interpretation.   Plaintiff contends that the second sentence "could be reasonably interpreted to mean that the courts of New York County would have jurisdiction over disputes arising under the Contract, if, and only if, they actually met all of the jurisdictional requisites.   In other words, the vague and imprecise nature of this language lends itself to a reasonable interpretation that such actions may be brought *to the extent* there is jurisdiction."   D.E. 12 at 5 (emphasis in original).

---

[5]Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

The Court understands Plaintiff to argue that the second sentence provides for permissive, not mandatory, jurisdiction in New York County. But Plaintiff's proposed construction flies in the face of the contractual language. The second sentence, by its terms, applies to "[a]ny disputes arising under" the License Agreement and requires that such causes of action "shall be subject *exclusively*" to the jurisdiction of the courts having jurisdiction over New York County. D.E. 11-1 at 20 (emphasis added). "Exclusively" means "[n]ot allowing something else[;] . . . [n]ot divided or shared with others." http://thefreedictionary.com/exclusive. As both parties agree that the applicable court in New York in this case is the United States District Court for the Southern District of New York, put simply, the second sentence demands that the parties submit their dispute only to the United States District Court for the Southern District of New York. In short, Plaintiff's proposed construction of the forum-selection clause in this case works only if the Court disregards the word "exclusively." That the Court cannot do. *See Chadwick*, 548 F.2d at 1162 ; *Reda* , 233 A.D. 2d at 915.

Furthermore, contrary to Plaintiff's argument, *Global Satellite Comm'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269 (11th Cir. 2004), cannot change this result. First, *Global Satellite* did not involve the same situation as that currently before this Court. Unlike the pending matter, where Defendant seeks to enforce a forum-selection clause to transfer venue from one federal district allegedly outside the covered area to another federal jurisdiction within it, in *Global Satellite*, the court considered whether the parties had contractually waived the right to remove a lawsuit from a state court with jurisdiction over the chosen county to the federal court whose jurisdiction also encompassed the selected county. For this reason alone, the case is not particularly instructive on the facts before this Court.

Second, even if *Global Satellite* were otherwise relevant, the clause at issue in *Global Satellite* differed significantly from the provision before the Court in the instant matter.  Plaintiff refers to the portion of the forum-selection clause in that case that read, "The parties to this agreement . . agree in the event of litigation to submit to the jurisdiction of Broward County, Florida," and notes that the Eleventh Circuit "found the phrase 'submit to the jurisdiction' to be 'vague and imprecise' and that the court similarly commented that the phrase 'fail[ed] to specify what kind of jurisdiction it [was] referring to, whether it be in personam or territorial.'" D.E. 12 at 6 (quoting *Global Satellite Comm'n Co.*, 378 F.3d at 1274).  This provision did not contain the word "exclusively" or a word with an equivalent meaning.  As a result, unlike the mandatory forum-selection clause at issue in this case, the *Global Satellite* clause was susceptible to being construed as a permissive one that allowed for, but did not require, the proceeding to occur in the designated forum.

Returning to the issue of whether proceeding in the Southern District of New York would be unfair or unreasonable to Plaintiff, Plaintiff has failed to identify any other factors supporting such a conclusion.  Instead, Plaintiff asserts merely that other than Tammara, Plaintiff has two witnesses in the Southern District of Florida, and the other potential witnesses to this case are "scattered throughout the United States;" most of Plaintiff's documents relating to this case are located in the Southern District of Florida; and Plaintiff handled performance of the License Agreement from its headquarters in Broward County, Florida.  D.E. 12 at 12-13.  While these facts demonstrate that venue lies in the Southern District of Florida, they do not show such "grave difficulty and inconvenience that, for all practical purposes, [Plaintiff] would be deprived of its day in court" by proceeding in the Southern District of New York.  *See P & S Bus. Machines, Inc.*, 331 F.3d at 807.

-18-

Finally, the interests of justice also favor New York as the most appropriate forum where this matter should be litigated. New York law governs the parties' contractual relationship and could potentially dispose of, or at least affect, the analysis of Plaintiff's fraudulent inducement and negligent misrepresentation claims. These causes of action are not specifically unique to Florida law, and Plaintiff does not contest that New York law applies in this case. While this Court is capable of construing New York law, federal courts in New York engage in that exercise with far greater frequency and, thus, can fairly be expected to have developed some expertise in that area.

Moreover, "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," thus contributing to the interests of justice in this matter. *See Stewart*, 487 U.S. at 33 (Kennedy, J., concurring). Here, Defendant explains that it includes the forum-selection clause in "virtually all" of its license agreements in an effort "to minimize the risk of diverting funds from [Defendant's] educational mission to the costs of litigation in another jurisdiction" and that it "prefer[s] the relative certainty and familiarity of a New York forum." D.E. 11-1 at 2. As Defendant relates, it "take[s] into consideration the economic benefit of each [license agreement] against the possible risks and costs of being forced to litigate in a jurisdiction other than New York." *Id.*

In contrast, Plaintiff has not suggested that forum selection was of any particular importance to Plaintiff in entering into the License Agreement. Where, as here, the parties entered into a valid forum-selection clause, this Court will enforce it. "By enforcing the contractual forum, the Court is not attempting to limit the [resident] plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen." *P & S Business Machines,* 331 F.3d at 807-08 (citing *In re Ricoh,* 870 F.2d at 573-574).

-19-

2.  The Claims at Issue in This Case Fall Within the Scope of the Forum-Selection Clause

As discussed previously, the forum-selection clause in this matter requires venue in New York for "[a]ny disputes arising under" the License Agreement.  D.E. 11-1 at 20.  Plaintiff contends that only "contractual claims" fall within the scope of the forum-selection clause.  D.E. 12 at 7–10. Accordingly, Plaintiff asserts, the clause does not cover Plaintiff's claims for fraudulent inducement and negligent misrepresentation.  *Id.*  Citing cases from outside this circuit, Plaintiff bases its position on its own interpretation of the phrase "[a]ny disputes arising under" the License Agreement, as well as on its contention that courts narrowly construe the phrase "arising under." *Id.*

While the Court recognizes that a difference of opinion exists among courts construing forum-selection clauses similar to the one at issue in this case, this Court finds more persuasive and applicable to the facts of this particular case the reasoning of the courts concluding that causes of action such Plaintiff's for fraudulent inducement and negligent misrepresentation fall within the language of the forum-selection clause.  First, other courts in this circuit have recognized that the Eleventh Circuit broadly interprets forum-selection clauses.  *See, e.g., Gen. Pump & Well, Inc. v. Laibe Supply Corp.*, 2007 WL 4592103, *3 (S.D. Ga. Dec. 28, 2007) ("*General Pump*" or "*Gen. Pump*") (citing *Stewart*, 810 F.2d at 1070); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1307-08 (M.D. Ga. 2003); *Picken v. Minuteman Press Intern., Inc.*, 854 F. Supp. 909, 911 (N.D. Ga. 1993).

In *Stewart*, 810 F.2d 1066, the Eleventh Circuit considered a forum-selection clause that provided for certain courts in New York to have "exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement." *Id.* at 1067.  In addition to causes of action that were "contractual in nature," the *Stewart* plaintiff also alleged claims of breach of warranty, fraud,

and antitrust.  In finding that these additional claims fell within the scope of the forum-selection clause, the Eleventh Circuit emphasized the word "any," reasoning that the language of the provision "includes *all causes of action* arising directly or indirectly from the business relationship evidenced by the contract.*"  Id.* at 1070 (emphasis added).

Although the *Stewart* clause included the words "or in connection with," in addition to "arising under," the omission of these words from the forum-selection clause before this Court does not change the outcome.  In support of its construction of the clause at issue in *Stewart*, the Eleventh Circuit relied heavily upon *Bense v. Interstate Battery System of America*, 683 F.2d 718 (2d Cir. 1982).  *Bense*, in turn, considered a forum-selection clause very similar to that at issue in the instant matter: "The exclusive venue of any suits or causes of action arising directly or indirectly from this Agreement shall be in Dallas County, Texas."  *Bense*, 683 F.2d at 720.  Giving a broad interpretation to this language, the *Bense* Court found that the clause required venue in Texas for a complaint alleging only antitrust claims.  *Id.* at 720-22.

District courts in this circuit have likewise construed language similar to that at issue in this case to include causes of action such as fraud and negligence.  In *McNair*, for example, the case involved claims stemming from the plaintiff farmers' purchase of a genetically engineered cottonseed.  As part of the purchase, the farmers signed a licensing agreement containing a forum-selection clause designating venue for "all disputes arising under [the] Agreement."  279 F. Supp. 2d at 1307.  When the farmers' crops failed or produced significantly smaller yields, the farmers sued, alleging various breach-of-warranty claims, as well as causes of action for product liability, negligence, and fraud.  The defendants sought to enforce the forum-selection clause, and the farmers

objected, asserting, among other grounds, that several of the claims were not contractual in nature, and, thus, did not come within the terms of the clause.

Noting that "the intention of the parties as reflected by the wording of particular clauses and the facts of each case" governs whether tort claims are subject to a forum-selection clause, the court focused on what it described as the "expansive" terms of the provision at issue in *McNair*.  *Id.* at 1308.  In so doing, the court concluded that all claims fell within the scope of the forum-selection clause because all of the plaintiffs' claims arose from the purchase and planting of the cottonseed that was the subject of the agreement containing the forum-selection clause.  *Id.* at 1307-08.  Moreover, the court noted, even where a forum-selection clause does not cover some of the claims at issue, a court may, nonetheless, transfer the non-covered causes of action along with those subject to the forum-selection clause in the interest of justice, particularly where doing so also provides for an efficient use of court resources.  *Id.*

Similarly, in *Smith v. Professional Claims, Inc.*, 19 F. Supp. 2d 1276 (M.D. Ala. 1998), the plaintiffs entered into an agreement with the defendant to purchase an electronic billing information system.  The contract into which they entered contained an arbitration and forum-selection clause applicable to "[a]ny dispute under this . . . Agreement."  *Id.* at 1278.  When the plaintiffs realized that they allegedly did not receive the system and information to which they believed the agreement entitled them, the plaintiffs sued, alleging fraud, misrepresentation, and violations of the Alabama Deceptive Trade Practices Act.  The defendant sought to enforce the forum-selection clause.

In considering whether the plaintiffs' claims fell within the scope of the forum-selection clause at issue in *Smith*, the court imported the reasoning of *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997), and *Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993), finding that

"whether a forum clause applies to a tort claim depends on the relation of the tort claim to the contract."  *Id.* at 1282.  Thus, although the *Smith* plaintiffs had asserted tort claims, the court concluded that the forum-selection clause extended to such claims because "the crux of [the plaintiffs'] complaint [was] that the products and services which they received were not the same ones that had been represented to them before the purchase."  *Id.*; *see also Manetti-Farrow, Inc. v. Gucci America, Inc.*,[6] 858 F.2d 509, 514 (9th Cir. 1988) ("[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.").

Likewise, in *Picken*, 854 F. Supp. 909, the plaintiffs entered into a franchise agreement with the defendant.  The agreement contained a forum-selection clause dictating venue for "any litigation commenced by either party hereunder [under the agreement]."  *Id.* at 910.  When the relationship between the plaintiffs and the defendant broke down, the plaintiffs sued, alleging breach of contract, fraud and deceit, and breach of fiduciary duty.  The defendant sought to transfer venue pursuant to the forum-selection clause, and the plaintiffs objected, arguing that the tort claims did not come within the scope of the clause.

In finding that the clause covered the tort claims as well as the so-called "contractual" causes of action, the court explained,

> Plaintiffs allege fraud in the inducement.  This type of fraud attacks the underlying transaction as having been deceitful.  It does not attack the language of the contract itself.  This is to be distinguished from fraud *in factum* in which a party is tricked into assenting without understanding the significance of his action. . . .
>
> Reading the word "hereunder" to apply only to a pure breach of contract claim between the parties would be unduly crabbed and narrow.  "Hereunder" refers to relations that have arisen as a result of

---

[6]The Eleventh Circuit has cited to the *Manetti* decision with approval in *Lipcon*, 148 F.3d at 1299.

> this contract.  To read otherwise would mean that the mere recitation
> of a form of action would dictate the enforceability of a forum
> selection clause.  Such a restrictive reading would frustrate
> commercial reliance on such clauses which are encouraged.

854 F. Supp. at 911-12.

Other courts have expressed a similar sentiment that a plaintiff's charging choices should not necessarily dictate whether a forum-selection clause applies.  In *Lambert*, the First Circuit described the plaintiff in that case as arguing "in effect, that he should be permitted to escape the consequences of the parties' forum selection merely be alleging tortious conduct relating to the *formation* (rather than the performance) of their contract."  983 F.2d at 1121 (emphasis in original).  Rejecting the plaintiff's position, the First Circuit explained,

> We cannot accept the invitation to reward attempts to evade
> enforcement of forum selection agreements through "artful pleading
> of [tort] claims" in the context of a contract dispute. . . .  Although the
> *Zapata* Court did indicate that a forum selection clause should not be
> given effect if it was the product of fraud, . . . , the Supreme Court
> subsequently interpreted this exception, in *Scherk v. Alberto-Culver
> Co.*, 417 U.S. 506 (1974), to exclude the sorts of claims raised by [the
> plaintiff]. . . .  The better general rule, we think, is that contract-
> related tort claims involving the same operative facts as a parallel
> claim for breach of contract should be heard in the forum selected by
> the contracting parties.

*Id.* at 1221-22.

From these cases, this Court draws several lessons: (1) forum-selection clauses are to be construed broadly; (2) whether a particular phrasing of a forum-selection clause covers a given cause of action requires a case-specific factual determination and depends on the relationship of the claim in question to the contract containing the forum-selection clause; (3) courts should subject claims pled as so-called "non-contractual" causes of action to vigorous scrutiny to ensure that the intent of the parties in entering into the forum-selection clause is upheld; thus, where a complaint alleges

-24-

fraud in the inducement, unless the alleged fraud stems from some type of elaborate scheme predating entry into the contract at issue, *see, e.g.*, *Armco, Inc. v. N. Atlantic Ins. Co. Ltd.*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999), such a claim falls within the scope of a forum-selection clause covering cases "arising under" the contract at issue; and (4) even where a forum-selection clause may not require transfer of some claims, a court may, nonetheless, transfer those causes of action to the designated forum along with the contractual claims, in the interests of justice.  Applying these teachings to the instant case, this Court concludes that the forum-selection clause at issue here requires transfer of all of the claims in this case.

First, as discussed above, other courts have found materially indistinguishable forum-selection clauses to include within their scope tort and fraud claims such as those that Plaintiff brings here.  *See, e.g., McNair*, 279 F. Supp. 2d 1290; *Smith*, 19 F. Supp. 2d 1276; *Picken*, 854 F. Supp. 909; *see also Stewart*, 810 F.2d 1066; *Bense*, 683 F.2d 718.  Second, the fraud and negligence counts in this case bear a close relationship to the License Agreement.  Indeed, both of these counts incorporate by reference the factual allegations underlying the so-called "contractual" claims.  *See* D.E. 1 at ¶¶ 33, 39.  Moreover, a plain reading of the fraud and negligence claims reveals that they center on the same factual issues as the so-called "contractual" claims.  *Compare* D.E. 1 at ¶¶ 26 & 31 *and* D.E. 1 at ¶¶ 34 & 36.  Third, as in *Picken*, the fraud-in-the-inducement claim in this case does not attack the language of the License Agreement itself, but instead challenges the underlying transaction as being deceitful.  Similarly, as noted previously, the negligent-misrepresentation claim concerns the same factual complaints as the so-called "contractual issues."  As such, while the Court does not purport to pass on the sufficiency of the fraud and negligence claims, for purposes of the forum-selection clause analysis, these counts constitute merely an alternative way of drafting what

is effectively the same basic complaint at issue in the breach-of-contract counts, and this Court should reject Plaintiff's efforts to call a rose by another name. For all of these reasons, the Court concludes that the scope of the forum-selection clause encompasses the fraud and negligence claims in this case.

Finally, even if it did not, Plaintiff does not dispute that the breach-of-contract claims (Counts I and II) fall within the scope of the forum-selection clause. Having found no reason not to adhere to the parties' intent as memorialized in the forum-selection clause, this Court must transfer venue of those claims to the Southern District of New York. As the fraud and negligence causes of action center on precisely the same factual background, splitting the case between the Southern District of New York and here would be wasteful of the resources of both the parties and the Court. Moreover, the fraud and negligence counts of the Complaint in this case arise under New York law, and the Southern District of New York is well-equipped to handle such claims. Thus, the interests of justice also require transfer of the fraud and negligence counts.

### 3.  Southern District of New York, You're the One

As this Court has determined that the forum selection clause is enforceable, mandatory, and applicable to the causes of action in the Complaint and to the parties, the Court concludes that it must enforce the forum-selection clause. Consequently, this case should be transferred to the United States District Court for the Southern District of New York for all further proceedings.

### III.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I respectfully recommend as follows:

1.      Defendant's Motion to Dismiss [D.E. 10] should be **DENIED**.

2.      Defendant's Alternative Motion to Transfer Venue [D.E. 10] should be **GRANTED**.

An Order directing the Clerk of the Court to execute a transfer of this action to the

Southern District of New York should be entered.

The parties shall have fourteen (14) days from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with the Honorable

William J. Zloch, United States District Judge.  Failure to file objections timely shall bar the parties

from a *de novo* determination by the district judge of an issue covered in the report and shall bar the

parties from attacking on appeal the factual findings accepted or adopted by the District Court except

upon grounds of plain error or manifest injustice.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144,

1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*,

677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[7] 28 U.S.C. § 636(b)(1).

**FILED and SUBMITTED** at Fort Lauderdale, Florida, this 26th day of March, 2010.

Robin S. Rosenbaum
United States Magistrate Judge

cc:     Honorable William J. Zloch
        Counsel of Record

---

[7]Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).